## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RODNEY EUGENE BOBLITT,

     Plaintiff,

v.                                                                                          Case No: 8:20-cv-1637-CEH-AAS

BP EXPLORATION &
PRODUCTION INC. and BP
AMERICA PRODUCTION
COMPANY,

     Defendants.
_____/

## ORDER

This matter comes before the Court on BP Defendants' Motion for Summary Judgment Due to Plaintiff's Lack of Proof of Causation, (Doc. 104), Plaintiff's response in opposition (Doc. 115), Defendants' Reply (Doc. 122), and Defendants' Supplemental Authority (Doc. 141). In the motion, Defendants request judgment in their favor because no genuine issue of material fact exists. Upon due consideration of the parties' submissions, and for the reasons that follow, Defendants' Motion for Summary Judgment (Doc. 104) will be granted.

## I.        THE *DEEPWATER HORIZON* LITIGATION

This is a toxic tort case arising out of the BP Oil spill that occurred in the Gulf of Mexico off the coast of Louisiana in 2010. The Eleventh Circuit summarized the incident and resulting litigation as follows:

BP Exploration & Production, Inc. leased *Deepwater Horizon*, a deep-sea platform, to drill for oil off the Louisiana coast. On April 20, 2010, an exploratory well near the rig exploded. During the fire that followed, the platform sank, spewing millions of barrels of oil into the Gulf of Mexico. It took over 90,000 people and 7,000 vessels several months to clean up the spill.

In the years that followed, many clean-up workers and coastal residents sued BP Exploration & Production, Inc. and BP American Production Co. Exposure to crude oil and other chemicals from the spill, they alleged, caused various medical conditions. All personal-injury claims against BP were consolidated in the Eastern District of Louisiana as part of the *Deepwater Horizon* multidistrict litigation. In 2012, BP entered a settlement agreement with the personal-injury litigants that provided two avenues of recovery. Those diagnosed with a specified condition (like acute bronchitis) shortly after the spill (on or before April 16, 2012), could submit a claim for fixed compensation against the settlement pot. Those diagnosed after the cutoff date— with what the settlement agreement called "later-manifested physical conditions"—could file separate, individual tort suits against BP as part of the "Back-End Litigation Option." Under the settlement's terms, these latent conditions must result from exposure to "oil, other hydrocarbons, and other substances released from" the spill or "dispersants and/or decontaminants used in connection with" response activities. And to recover for these conditions, backend plaintiffs must establish several elements, including the existence of a physical injury, "[t]he level and duration" of their "exposure," and that the injury was "legally caused" by that exposure.

*In re Deepwater Horizon BELO Cases*, 119 F.4th 937, 942 (11th Cir. 2024). The oil spill resulted in thousands of claims. *In re Deepwater Horizon BELO Cases*, No. 20-14544, 2022 WL 104243, at *1 (11th Cir. Jan. 11, 2022). Plaintiff Rodney Boblitt is one of many plaintiffs who filed a back-end-litigation action.

2

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Rodney Boblitt ("Plaintiff" or "Boblitt") alleges that he was a "Clean-Up Worker" as defined by the Medical Class Action Settlement ("MSA"). *See* Doc. 1 ¶ 1 (citing *Deepwater Horizon Medical Benefits Class Action Settlement Agreement,* as Amended on May 1, 2012, MDL 2179, Doc. 6427-1 (May 3, 2012), § II.Q); *see also* Doc. 3-3. In March 2020 Boblitt filed this Back-End Litigation Option ("BELO") lawsuit in the Eastern District of Louisiana as required by the MSA seeking recovery for a Later-Manifested Physical Condition ("LMPC"). Doc. 48. Boblitt sues Defendants alleging he suffered permanent injuries as a result of his exposure to oil, dispersants, and other harmful chemicals in conjunction with his responsibilities as a Clean-Up Worker. Doc. 48 ¶ 29.

The action was transferred from the EDLA to this Court on July 15, 2020. Doc. 7. In this action, Boblitt seeks recovery for the following LMPCs: extensive pansinusitis, chronic rhinitis, chronic rhinosinusitis, mild obstructive sleep apnea, depression severe, and post-traumatic stress disorder. Doc. 48 ¶¶ 29, 30. The MSA requires BELO plaintiffs, including Boblitt, to prove legal causation, that is, whether his LMPC was legally caused by his exposure to oil, other hydrocarbons, and other substances released in connection with the response activities. Doc. 3-3 at 11.

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits. For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

In December 2020, Boblitt requested and obtained a 150-day stay of the case management deadlines in this action in order to pursue in the MDL a new LMPC of memory impairment. Docs. 34, 35, 36. In June 2021, Boblitt filed his second BELO lawsuit in the MDL court against the BP Defendants (second action), which was ultimately transferred to this Court and consolidated with the instant (Lead) case. *See* Case No: 21-cv-2802-CEH-AAS (M.D. Fla.); *see also* Docs. 41, 42.

In February 2022, Boblitt filed an Amended Complaint (Doc. 48), and the Court issued an Amended Case Management and Scheduling Order (Doc. 44). Pursuant to the Amended CMSO, expert disclosure deadlines were October 7 and November 7, 2022, for Plaintiff and Defendants, respectively. *Id.* at 1. In July 2022, more than four months prior to the expiration of the December 2, 2022 discovery deadline, Boblitt filed an opposed motion to continue all deadlines by another 120 days. Doc. 53. Because the motion failed to establish good cause and to demonstrate due diligence for the requested extension, the Court denied Boblitt's motion. Doc. 55.

On October 6, 2022, Boblitt filed another motion to stay all deadlines based upon his LMPC of toxic encephalopathy for which he submitted a notice of intent to sue to the Medical Benefits Claims Administrator. Doc. 58. On November 17, 2022, the Court stayed the case to allow Boblitt to file a new BELO lawsuit in the Eastern District of Louisiana for his LMPC of toxic encephalopathy.  Doc. 60. That action, which alleged toxic encephalopathy resulted in his memory problems, difficulty with multi-tasking, and overall psychological dysfunction, was transferred to the Middle District of Florida, assigned  Case No.  8:23-cv-2623-MSS-AEP,  and  thereafter

4

consolidated with this action. Doc. 72. On March 5, 2024, the Court held a status conference to discuss the discovery and scheduling plan going forward. Docs. 82, 84. Plaintiff requested that no scheduling order be entered and that the Court permit an extended discovery period because of delays related to obtaining third-party discovery. In response, Defendants argued that the third-party discovery that Plaintiff seeks does not go to the issues that Plaintiff must establish to get beyond summary judgment, namely to overcome the hurdle of general and specific causation by expert testimony in a toxic tort case such as this. Defendants based this on their experience litigating multiple cases in the Northern District of Florida for five years and engaging in the third-party discovery in those cases. The Court declined Plaintiff's request and entered an amended scheduling order.

Following the hearing, the Court entered a Second Amended Case Management and Scheduling Order (CMSO). Doc. 83. The Second Amended CMSO scheduled trial for the October 2025 trial term, with a deadline of September 3, 2024, for Plaintiff to disclose his experts. *Id.* at 1. On August 26, 2024, about a week before Plaintiff's expert disclosure deadline, Plaintiff filed an unopposed motion to extend expert disclosure deadlines. Doc. 86. Plaintiff sought an extension until November 13, 2024, in which to disclose his experts' reports. The requested extension was tied to Plaintiff's need to take the deposition of BP employee John Fink who the parties agreed would be deposed on October 28, 2024. Plaintiff indicated that his experts needed to incorporate Fink's testimony into their reports. Additionally, Plaintiff cited the need to obtain third-party discovery as a basis for his requested extension. The

Court granted the motion, and the expert disclosure deadlines were extended to November 13, 2024 for the Plaintiff; January 17, 2025 for the Defendants; and rebuttal reports due February 7, 2025. Doc. 88.

On November 1, 2024, Plaintiff again moved to continue the case management deadlines 120 days. Doc. 98. In support of the requested extension, Plaintiff contends that on June 17, 2024, he requested employment records from the Florida Fish and Wildlife Conservation Commission ("FWC") and the Florida Department of Environmental Protection ("FLDEP"), but that production of documents did not begin until August 2024. While Plaintiff was waiting for documents from Plaintiff's employers, Defendant took the deposition of Plaintiff. During that deposition, it came to the parties' attention that as part of Plaintiff's work on the Oil Spill, Plaintiff submitted "RECON Reports." According to Plaintiff, the RECON Reports contain information regarding his location and his exposure to oil, chemicals, and dispersants during the time of his clean-up work. Following that deposition, Plaintiff's counsel sought to obtain these reports from FWC and FLDEP, but to no avail. In his motion, Plaintiff represented that he and his experts needed the information to determine his date, time, and location. Defendants filed a response in opposition arguing Plaintiff failed to demonstrate his diligence in attempting to meet the expert disclosure deadline or obtain his own employment records. Doc. 102.

On December 10, 2024, the Court denied Plaintiff's motion for another extension of the expert report and other deadlines. Doc. 111. The Court found that Plaintiff failed to provide good cause or explanation for failing to obtain his own

employment records earlier in the litigation considering the case has been pending since 2020.[2] Additionally, Plaintiff failed to explain why his experts could not rely on the information Plaintiff already had in his Time Sheet Summary Reports that provide information regarding when and where Plaintiff worked as a response worker.

On December 26, 2024, Plaintiff filed a motion for reconsideration of the Court's order denying an extension of the expert disclosure deadlines. Doc. 118. A status conference on the case was held April 30, 2025, at which the Court heard argument on Plaintiff's motion for reconsideration. Doc. 144. Specifically, the Court inquired as to whether Plaintiff had now obtained the needed employment records and/or RECON reports. Plaintiff had not. Plaintiff's counsel acknowledged that the Court had previously extended the deadlines multiple times, but he argued he still did not have adequate time. As it relates to the sought-after discovery, however, Plaintiff could point to no additional steps taken to obtain these documents other than reaching out to the FWC and FLDEP two months prior to inquire about the status of the employment record production, to which he was told the production would be made on a rolling basis. Thus, the status of obtaining the records was unchanged since the Plaintiff's initial November 1, 2024, motion, filed more than six months earlier. The Court observed that discovery did not close until April 7, 2025, and yet no new discovery requests were sent out seeking the information. Because Plaintiff failed to

---

[2] The Court notes that while there have been a number of changes in the attorneys representing Plaintiff throughout this litigation, *see* Docs. 40, 52, 57, 90, the Downs Law Group has been counsel of record since the case was first filed (Doc. 1), and specifically lead counsel Charles David Durkee has been Plaintiff's counsel since August 2020. Docs. 28, 29.

demonstrate due diligence in obtaining the documents he argued were necessary and failed to provide a basis for the Court to change its prior ruling, the motion for reconsideration was denied. Doc. 145.

Defendants moved for summary judgment on November 25, 2024. Doc. 104. They argue they are entitled to judgment in their favor because Plaintiff has produced no evidence linking his injuries to toxic exposure, which proof they urge is required under the MSA and Eleventh Circuit precedent. Because of the technical nature of the proof, Plaintiff must come forward with expert testimony to meet his burden of establishing causation. Boblitt has offered no expert testimony to support his claims, and therefore Defendants argue they are entitled to judgment in their favor.

In his response filed December 17, 2024, Plaintiff does not contest Defendants' argument that expert testimony is required to establish causation. Instead, he requests the Court defer consideration of Defendants' motion until he briefed his motion for reconsideration of the Court's denial of his request to extend expert disclosure deadlines. Doc. 115.

The Court deferred ruling on the summary judgment motion as there has been no ruling until this order. As discussed above, the Court heard argument on the motion for reconsideration at the status conference held in April 2025, five months after Plaintiff's response. After Plaintiff's counsel showed no effort to obtain the sought-after discovery in the preceding five months and because the status of obtaining the records was essentially unchanged since the Plaintiff's initial request in November 2024, the Court denied the motion for reconsideration. Plaintiff offered no reasonable

explanation for the lack of progress in obtaining the sought-after discovery. At the hearing, the Court offered Plaintiff's counsel the opportunity to supplement his response to the motion for summary judgment. Counsel declined to file a written supplement, instead making an oral statement acknowledging that he did not have expert reports and that the summary judgment was due to be granted in light of that.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the

court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

## III.   DISCUSSION

Defendants move for summary judgment in their favor arguing Plaintiff is unable to establish a causal connection between his specific injuries and the toxic exposure resulting from the oil spill. Plaintiff concedes he has no expert testimony regarding causation and that the motion is due to be granted. Although the instant motion for summary judgment is unopposed, the Court is obligated to ascertain whether Defendants are entitled to judgment on the merits. *See, e.g., United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The Eleventh Circuit has explained that a BELO plaintiff must litigate five issues: "(a) the fact of diagnosis; (b) the amount, location, and timing of oil and/or dispersants released and/or used during the *Deepwater Horizon* Incident or Response Activities; (c) the level and duration of the Class Member's exposure; (d) causation, including potential alternative causes; and (e) the amount, if any, of compensatory damages. (MSA § VIII.G.3.a.)" *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 125 (E.D. La. 2013). In toxic tort cases such as this, "[s]cientific knowledge of the harmful level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiff's burden[.]" *McClain*

*v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005) (citing *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)). Critical here, expert testimony is required on these issues. *Id.* at 1237. Thus, to survive summary judgment, Boblitt must come forward with reliable expert testimony showing there is no question of fact as to the causation of his injuries. Plaintiff has failed to do so.

As Defendants' response points out, courts in this Circuit addressing BELO claims arising out of the BP oil spill have universally required plaintiffs to put forth expert testimony to establish causation. *See* Doc. 104 at 5, n.3 (citing *In re Deepwater Horizon BELO Cases*, No. 20-14544, 2022 WL 104243, at *2 ("In a toxic-tort case like this one, a plaintiff must establish both general and specific causation through admissible, reliable expert testimony."); *Townsend v. BP Expl. & Prod. Inc.*, No. 4:16-CV-301, 2017 WL 4236372, at *2 (N.D. Ala. Sept. 25, 2017) ("To prevail on his claims, Plaintiff must prove exposure to the dispersants and crude oil, their exposure, and that their toxicity caused his illnesses.") (citation omitted); *Origene v. BP Expl. & Prod. Inc.,* No. 18-25069, ECF No. 45 (S.D. Fla. Sept. 16, 2019) ("[I]n a toxic tort case such as this, a plaintiff must rely on expert testimony to prove his medical diagnosis and causation."); *Rayo v. BP Expl. & Prod. Inc.*, No. 19-21263-Civ-Martinez, 2019 WL 7376775, at *2 (S.D. Fla. Nov. 15, 2019) ("And in toxic tort cases like this one, the minimal facts necessary to prove causation are (1) specific knowledge of the harmful level of exposure to a particular chemical, and (2) knowledge that the plaintiff was exposed to such quantities."); *Jordan v. BP Expl. & Prod. Inc.*, No. 19-0280-CG-MU-C, 2020 WL 1639985, at *3 (S.D. Ala. Feb. 3, 2020) ("In a toxic exposure case like the

11

present one, the Eleventh Circuit has determined that a plaintiff must produce competent evidence of general causation and, as well, must prove specific (or individual) causation."); *Batchelder v. BP Expl. & Prod. Inc.*, No. 18-0533-CG-MU-C, 2020 WL 1638450, at *3 (S.D. Ala. Feb. 11, 2020) (same); *Scarbrough v. BP Expl. & Prod. Inc.*, No. 2:19-cv-00706-AMM, 2020 WL 3894002, at *2 (N.D. Ala. Jul. 10, 2020) ("To prevail on his claims, [plaintiff] must prove through expert testimony that his exposure to oil, dispersants, and other harmful chemicals caused his alleged injuries. This is because causation is an essential element of [plaintiff's] toxic tort claim, and the Eleventh Circuit has held that such causation cannot be established without reliable expert testimony."); *Adler v. BP Expl. & Prod. Inc.*, No. 1:19-cv-79-TFM-N, 2020 WL 10319810, at *3 (S.D. Ala. Sept. 1, 2020) ("[T]his is a toxic tort case, and thus, Plaintiff must show that his illnesses are connected to the toxic chemicals he was exposed to during the clean-up efforts. This type of proof requires expert testimony.") (citations and quotations omitted)).

As Plaintiff has admittedly failed to come forward with any expert testimony establishing causation to show that his conditions are connected to the toxic chemicals he was exposed to during the clean-up efforts, Plaintiff cannot establish the elements of his claims. Defendants are entitled to summary judgment as a matter of law. Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      Defendants' BP Defendants' Motion for Summary Judgment Due to Plaintiff's Lack of Proof of Causation (Doc. 104) is **GRANTED**.

12

2.    The Clerk is directed to enter judgment in favor of Defendants, BP Exploration & Production, Inc. and BP American Production Company, and against Plaintiff, Rodney Boblitt.

3.    The Clerk is further directed to terminate pending motions and deadlines and **CLOSE** this case. The Clerk shall also docket a copy of this order in the member cases, Case No: 21-cv-2802-CEH-AAS (M.D. Fla.) and Case No: 23-cv-2623-CEH-AEP (M.D. Fla.) and **CLOSE** those cases.

**DONE AND ORDERED** in Tampa, Florida on January 20, 2026.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any